Good morning. Good morning. May it please the court, Jonathan Libby appearing on behalf of appellant Kevin Ellis. Do you want to reserve any time for rebuttal? I would like to reserve two minutes for rebuttal. Okay, thank you. Your honors, among the things the government promised in the plea agreement was not to argue for application of any adjustment other than those that had been agreed to in the plea agreement and to make no motion for an upward departure as to defend its offense level. The government breached the plea agreement in this case when it argued for application of an adjustment under section 3C 1.2, which had not been stipulated to in the plea agreement. I was a little confused by that argument. I didn't see the government directly arguing for application. In talking about why there should be an upward variance generally, which it had reserved the right, it referenced that section and said, for example, that high-speed chase conduct wasn't taken into account because of the way the grouping rules work. But it didn't seem to be directly saying, so you should change the specific offense levels. He was just saying in the discussion of an upward variance. So help me understand why that's a breach. Well, it's a breach, for one, the government failed to object to the inclusion in the pre-sentence report of that adjustment. Was failure to object something that was referenced? Was the government said it would object to the PSR's recommendation? No, but this Court has said in Gunn v. Ignacio, which was actually reviewed under a much higher standard because it involved AEDPA and everything, this Court said there where the state had promised not to oppose concurrent sentences, where the pre-sentence report included that recommendation, and the government failed, the state failed to object, that that, in fact, was a breach. Well, they had promised not to oppose concurrent sentences and what the pre-sentence report recommended, consecutive sentences. But here, they just didn't argue for what the PSR was asking for. They just didn't object to it. And I don't think it's exactly a Gunn situation. Well, under Gunn, and I'll just quote specifically from Gunn, and I quote, for a prosecutor to tell a judge at sentencing that he concurs in a pre-sentence report is an argument at sentencing in accord with the pre-sentence report. That's a quote from Gunn. Was that error, though, harmless? Because it didn't, assuming that it was an error, I think the whole point was that the addition of that enhancement didn't change the final number based on the grouping rules. Your Honor, the law is very clear. Harmless error does not apply to breach of the plea agreement. A breach is a breach. If the government breached, that's it. Harmless error does not apply. A structural error? Yes, ma'am. It is, in fact, around a structural error. Sanabella makes that clear. All of this Court's case law makes that clear. Harmless error simply does not apply. If the government did not follow the promises it made in the plea agreement, that's it. You're entitled to re-sentencing before a different judge. And that's because the defendant wouldn't have, the theory is the defendant wouldn't have entered into the plea. But, yes. But for the government's scrutiny. Promises not to do certain events. Correct. You know, and in fact the government, in addition to not objecting to the pre-sentence report, the government affirmatively, during the sentencing hearing, and I think that's on page 40, affirmatively argued that that enhancement, that adjustment was appropriate here. But not in the specific offense level context. That was in the variance. Well, the government was certainly arguing that there should have, it should have, there should be a higher sentence. There should be some acknowledgement of that conduct. I didn't see that going to change the specific offense level. It was more change the overall sentence number. That's true. But the government agreed with the probation officer that that adjustment was appropriate. Which it had agreed in the plea agreement not to, in fact, argue for any adjustments. If we didn't agree with you on that point, I'm curious about whether, if a criminal history category departure under U.S. SG 4A 1.3 is subject to general reasonableness review under Mohammed, or is it a procedural error that we review for harmlessness under Tankersley? Your Honor, I'm not sure I understand the question. I mean, we're not object, we're not challenging the departure that the government argued on criminal history grounds. That they were permitted to make in the plea agreement. We're arguing, and we did argue, however, that they, in fact, have made an argument for a departure for reckless endangerment under 3C 1.2, which they were not permitted to make. Now, in the government's sentencing papers, under a heading that reads, quote, Booker-based arguments for an upward departure, the government then argued that the adjustment that probation had included for reckless endangerment under 3C 1.2 was not sufficient. Essentially, what the government did here was argue a 5K 2.0. But if we don't agree that there was a breach, don't we have to review the sentence for reasonableness, or what do we? Oh, certainly, Your Honor. And I wasn't planning on addressing the reasonableness arguments of the sentence, but... Well, are you not prepared to discuss it? Oh, no, I'm certainly... Let me follow up on Judge Callahan's question. So, in your briefing, you said that the court's sentencing was procedurally unreasonable because it went from Category 2 to Category 3 for the criminal history level. And the question that I understood Judge Callahan to be asking, and I have it as well, is, in our case laws, Mohammed says we generally don't look at departures, we only look at the sentencing for ultimate reasonableness. So, should we... Does that apply in this context of criminal history, or are you arguing that we should do something different? I do think when you're looking specifically at a criminal history departure that you do have to focus on that specifically. And then you broadly view for reasonableness for the entirety of the sentence. I think it's a separate process. Well, in Mohammed, we said in the context of, I think it was offense levels, we're not going to consider departures. We're just going to look at reasonableness. So, we don't consider that a procedural error. And then, Tankersley, we suggested we do that also in criminal history. Right. All I can say is I would submit that you should look at and focus on the criminal history and see if, in fact, that was warranted in the context of the overall reasonableness analysis. So, we're doing a 35538 analysis? With respect to the reasonableness argument. Yes. That's helpful. Yes. If I could turn back to the breach argument with respect to the departure. If you look at Section 3C1.2, in effect under Application Note 6, it discusses the fact that if the convict posed a substantial risk of death or bodily injury to more than one person, an upper departure may be warranted. And then Cite 2.5K. That is exactly what the government argued here. If you reviewed what they argued on pages 128 to 130, they talk about how the risk was to others because the police pulled out weapons and so others could have been harmed. Do you want to save two years? That's what I'm saying. Thank you. Good morning. Rob Keenan for the government. The parties stipulated to a total offense level of 29. The parties got it right according to the pre-sentence report, the guideline calculations of the total adjusted offense level was correct. That's why neither party in their sentencing briefs and their response to the pre-sentence report made any noise about any of the count-specific guideline calculations that the pre-sentence report went through as to each of the bank robbery counts. So why under Gunn, which is what opposing counsel is relying on, the government wasn't obliged to object to the inclusion in the PSR of this additional, I guess it was 3.2C. The party, the entire point of Gunn is that if, in that case, the prosecutor concurred with a pre-sentence report that recommended consecutive sentences, which was in conflict with the promise in the plea agreement, that it would not oppose concurrent sentences. Basically, that it would be on board with concurrent sentences. And there was a vast difference in those two recommendations, first in the promise and then in the position at the sentencing hearing. It wound up being, I think, close to a ten-year sentencing difference. Many years. In this case, there's no consequence to paragraph 98, the application of 3C.1.2, two-level adjustment. So that's a harmless error argument that he says is not, that we can't listen to. I believe there is case law to the effect that indicates that harmless error analysis doesn't apply once... So a breach is a breach. And so you have to, you've got to stick to the position there wasn't a breach. Correct. I think, first, there was no breach. And second, any breach that may be found wasn't material. And I think the concept of materiality is actually embedded in the concept of the word, in the word application. Both parties agreed. It's a mutual promise to not argue for application of any dot, dot, dot adjustment beyond those that they stipulated to in paragraph 14. It's the first sentence directly under the parties' guidelines stipulations. So what does application mean? You know, there's a number of dictionary definitions. And in the U.S. v. Strites, this court has held common dictionary definitions of commonly used words that matter. Merriam-Webster dictionary, an application is an act of applying or an act of putting to use. What does applying mean? It says to put to use, especially for some practical purpose. To bring into action. To put into operation or effect. My main point is, in the sentencing, in our answering brief, is that paragraph 98 in the pre-sentence report, and its inclusion of a two-level enhancement or adjustment as to count seven, is a count-specific adjustment that is irrelevant to the parties' calculations and ultimately to the calculation of the total adjusted defense level, 29, that both parties agreed to. It doesn't put the two-level adjustment into effect. It doesn't have any practical, meaningful effect on what the primary focus of paragraph 14 is. Namely, that there is, it's a very, plea agreements are practical documents. The parties' stipulations in paragraph 14 are designed to get to the total offense level. We had one proviso regarding whether the defendant might be a career offender. But putting that aside, because he wasn't a career offender, the parties agreed that the bottom line would be a level 29. That's reflected in the party's appellate waiver, for example. We fixed the waivers at total offense level 29. The entire point of that paragraph is to determine what the advisory sentencing range is under the guidelines. And once you're done with that, you put it aside, and then you're arguing under 3553A, under Booker, we reserve the right. Very unusual. I've never done it before, and in 10 years, in any case. But I reserve the right expressly because I was concerned about that inadequacy of the way the guidelines applied and the sentence that, the advisory sentence that it prescribed. The government never, in its initial response to the pre-sentence report, varied from the party's stipulations to a total adjusted offense level. We didn't argue for anything higher. In that case, we said we had no objection to the pre-sentence report's calculation of the total adjusted offense level, and then the colon level 29. And then in the supplemental briefs, we never departed from that either. I stated in two occasions, in the first supplemental brief and in the second, and also in the opposition to the breach motion, that the government stands by the party's stipulations. We got it right. It was level 29. That's the total. Because the parties agreed with that, there was no point in going through in the plea agreement what the count-specific enhancements were for each of the counts, other than count five, because those don't matter. That's why we didn't detail it in the plea agreement in the manner the pre-sentence report does. Can we direct you to the second prong of questioning? Just assume for the purposes of argument that we did not find that there was a material breach, and we move on. What is your view about whether a criminal history category departure under USSG 4A 1.3, subject to general review for harmlessness under Tankersley? I think it's a procedural error that's reviewed for harmless error. I don't think it's a general reasonableness analysis. Those are two different concepts, departure and variance. I think there's some case law in this circuit that suggests they're kind of the same thing. They really aren't kind of the same thing. Well, tell me why. Well, because you don't get to the Sentencing Commission. Because, okay, the standards of review, obviously, the latter standard under Tankersley, whether it really makes any difference at the end of the day when you shake it up all in a bag, I'm not sure. But the Tankersley standard is more deferential to the judge, right, than the reasonableness standard. So why are they different, and why should the more deferential standard, from your perspective, be applied? Well, I think the primary point I was going to make on that is that when the Sentencing Commission, in its guideline manual, sets forth the terms of a departure, it delineates the scope of a departure. When it applies, it has various, the way they phrase it, specific criteria that have to be met in order to apply that. And it's a, I don't ultimately know that the standards of review differ all that much, but I think that's... But one is more deferential. The harmless error standard at Tankersley, I agree. And I'm not sure why that is, but I think Tankersley is the appropriate way to analyze that criminal history category. You're still not giving me a hook here. I mean, why, you know, because generally when we apply a more deferential standard, it's because of what the judge is doing, you know, and I mean that it requires a somewhat different thought process. Because they're there, as opposed to something that is more a legal determination. Right. You know, I mean, the reasonableness standard, technically, is a little more of an invitation for appellate judges to weigh in on what's reasonable as a matter of law or not. Right. As opposed to, what, an abusive discretion standard. Right. Well, I think it's Cardi that says... We're just trying to understand why is the thought process different for a judge? I don't know the answer. I thought that on criminal history and departure. I don't know the answer as to why those would, two different standards of review are noted in Muhammad and Tankersley. As to the breach issue, the defendant's, my primary point is that the defendant's interpretation of what the paragraph 14 obligated the government to do is unreasonable. It requires the government and the defendant, presumably as well, it's a mutual promise, to make objections to irrelevant matter that doesn't affect guideline calculations, that don't affect the total bottom line, the bottom line level. It also invites the parties to waste the time of the district court, which is not a reasonable interpretation of the plea agreement either. And lastly, the defendant's own failure, I think, to object to it. It's not that they breached two. Their failure to object to paragraph 98 validates the government's understanding of the plea agreement. You're out of time. I think my time is up, so thank you very much. All right. Thank you for your argument. Your Honor, plea agreements may be practical documents, but they're contracts, and words have meaning, and promises were made, and promises were broken, and that's a breach. But what about his argument that the person that made the agreement wasn't as offended as you are? Well, Your Honor, the fact that the defendant didn't object also to the PSR? Right. Well, right there in court, because those are the people that know what they said. And if it means that we breached the plea agreement, so we're entitled to a resentencing before a different judge because we breached it as well, so be it. No, I think what he's arguing is that it's a meeting of the minds, and it's sort of that you can't anticipate everything that's going to come up, and that every, you know, you can't script what everyone's going to say at a sentencing. So essentially, he's saying, hey, the prosecution said what they, they only said what they said that they were going to, and they didn't, you know, otherwise, and obviously if the defendant really thought that we were doing something wrong, the defendant would have said it right there. Which again, goes to harmlessness, which I don't believe it is. I mean, there's been talk about, you know, Well, no, but it still has to be material. It still has to be material. And if it's not material, then We don't know, Your Honor, what in fact, let's assume the government had not made this departure argument that they made with respect to that same enhancement. Let's assume they didn't. Then that's still before the judge. The judge then has that information in its mind, and we don't know what effect that could have had on the court in reaching the ultimate sentence that it reaches. So to say that, well, the fact that it didn't have any effect on the guideline range doesn't mean the judge wouldn't have considered that, whether anyone argued it or not. And so from that perspective, it absolutely could have been material. And I have five seconds, so unless the court has questions, I'll submit. We don't. Thank you both for your argument. This matter will stand submitted. The next matter on calendar is Hubai, Samblian Industrial Company v. Robinson Helicopter 0956629.
judges: Rymer, Callahan, Ikuta